UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA, ILLINOIS

| | | |
|---|---|---|
| MEREDITH DOWNES, | ) | |
| | ) | JURY DEMAND |
| Plaintiff, | ) | |
| | ) | Case No. 19-CV-_____ |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS STATE UNIVERSITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES the Plaintiff, MEREDITH DOWNES (hereinafter referred to as "Downes"), by and through her attorneys, Costigan & Wollrab, P.C., and complaining of the Defendant, ILLINOIS STATE UNIVERSITY (hereinafter referred to as "ISU"), states as follows:

**I.    JURISDICTION**

1.    That this action is brought under Title VII of the *Civil Rights Act of 1964*, 42 U.S.C. § 2000e-16, and the *Equal Pay Act of 1963*, 29 U.S.C. § 206(d), which together with 28 U.S.C. § 1331 vest this Honorable Court with jurisdiction.

2.    Downes has complied with all pertinent administrative prerequisites by timely filing a Charge of Discrimination with the United States Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC"). Downes has received a "Right to Sue Letter" from the EEOC, a copy of which "Right to Sue Letter" is attached hereto and incorporated herein by reference as "Plaintiff's Exhibit A."

3. This Complaint is being brought within ninety (90) days of Downes' receipt of the "Right to Sue Letter."

II. **VENUE**

4. Venue is properly placed in the Central District of Illinois, Peoria Division, under 28 U.S.C. § 1391(b). Downes resided in Bloomington, McLean County, Illinois at all times relevant to the matters set forth in this Complaint. ISU is a public, state university of the State of Illinois. ISU's principal place of business is in Normal, McLean County, Illinois. Lastly, the acts complained of herein transpired in Normal, McLean County, Illinois.

III. **PARTIES**

5. Downes is a citizen of the United States of America and is a resident of Bloomington, McLean County, Illinois. Downes was a resident of Bloomington, McLean County, Illinois at all times relevant to the matters set forth in this Complaint. Downes is over the age of eighteen (18) years.

6. ISU is a public, state university of the State of Illinois. ISU's principal place of business is located in Normal, McLean County, Illinois.

7. ISU is an employer within the meaning of both Title VII of the *Civil Rights Act of 1964*, 42 U.S.C. § 2000e-16, and the *Equal Pay Act of 1963*, 29 U.S.C. § 206(d).

IV. **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

8. Downes is employed by ISU and has been employed by ISU at all times relevant to the matter set forth herein. Downes began her employment with ISU on January 10, 1997 and received tenure on February 1, 2002.

9. Downes is a tenured, full professor in ISU's Department of Management and Quantitative Methods.

10. There are nine (9) tenured, full professors in ISU's Department of Management and Quantitative Methods. Of these nine (9) individuals, Downes is the sole female tenured, full professor in the Department.

11. ISU's "Faculty Appointment, Salary, Promotion, and Tenure Policies" (hereinafter referred to as the "ASPT") govern the terms and conditions upon which faculty members' salaries are based. The ASPT also sets forth the means by which faculty members shall be evaluated on an annual basis and the terms and conditions upon which faculty members shall receive annual raises. A true and accurate copy of the ASPT is attached hereto and incorporated herein as "Plaintiff's Exhibit B."

12. In accordance with the ASPT, the Department of Management and Quantitative Methods has implemented its own Appointment, Salary, Promotion, and Tenure Policies (hereinafter referred to as the "Department Policies"). The Department Policies provide for Department faculty members to receive either a "Standard Raise" or a "Raise Above the Standard Increment" based upon faculty members' annual performance evaluations. Faculty members eligible for a "Standard Raise" are those who "(1) maintain an acceptable level of performance in teaching[,] . . . (2) maintain an acceptable level of intellectual contributions, that is, research and scholarship[,] . . . [and] (3) exhibit good department citizenship and maintain an acceptable level of service relative to faculty rank." Faculty members eligible for a "Raise Above the Standard Increment" are those who "(1) have good teaching performance[,] . . . (2) have significant research outcomes as defined by outcomes which have an impact on the field[,] . . . and (3) make significant service contributions." A true and accurate copy of the Department Policies are attached hereto and incorporated herein as "Plaintiff's Exhibit C."

13. The Department Policies include the following pertinent language concerning

annual salary increases:

> Raises will be distributed using the following guidelines:
> (1) 20% of the "available raise pool" (available raise pool = raise pool minus the 10% held by the Provost's office) will be distributed to raise eligible faculty at the university standard increment as per Section 7.2a and 2b of the University's ASPT guidelines. This amount will be distributed as an equal percentage of the base to all raise eligible faculty.
> (2) The remainder of the "available raise pool" will be distributed as a . . . [Department Faculty Staff Committee] standard increment to "raise eligible" faculty who maintain a level of intellectual contribution sufficient to be viewed as "academically qualified" under AACSB standards as indicated below. This amount will be distributed as an equal percentage of the base salary. The distribution will occur as follows:
>> If the remainder of the available raise pool (see above) is less than 3%, then 75% of this pool will be distributed as an equal percentage of base salary to all raise eligible faculty who maintain academically qualified status. The distribution of the rest of the funds will be based on performance.
>> If the remainder of the available raise pool (see above) is 3% or more, then 50% of this pool will be distributed as an equal percentage of base salary to all raise eligible faculty who maintain academically qualified status. The distribution of the rest of the funds will be based on performance and equity considerations. The allocation between performance and equity will be distributed by a departmental vote at that time.

14. The Department of Management and Quantitative Method's faculty performance evaluations are made on February 1st of each year by a four (4)-member Department Faculty Staff Committee. The Department Faculty Staff Committee consists of the chair of the Department of Management and Quantitative Methods as well as three (3) other faculty members in the Department. The chair of the Department makes raise and salary decisions based on said evaluations.

15. In her most recent annual performance evaluation issued on or about February 1, 2019, Downes met all the criteria for "Raise Above the Standard Increment." This review was consistent with Downes' ratings for the past nine (9) calendar years.

16. In spite of the foregoing, as of February 1, 2019, Downes earned less than all but

two (2) tenured, full professors in the Department of Management and Quantitative Methods. The two (2) colleagues that earn less than Downes are not similarly situated to her. Indeed, those two (2) professors are either retiring or on inactive status. Furthermore, upon information and belief, Downes has earned a higher rating than some, if not all, of her six (6) male colleagues that earn significantly higher salaries than she does. Indeed, Downes has a record of publishing more scholarly articles than all but three (3) of her eight (8) male colleagues. Additionally, Downes has been denied the ability to teach four (4) successive summer courses without penalty (and thereby increase her earnings for purposes of calculating her pension) while all of her male colleagues have been afforded this opportunity without penalty.

17. The current interim chair of the Department of Management and Quantitative Methods, Roberta Trites, is an English professor. Roberta Trites has acknowledged to Downes that the Department of Management and Quantitative Methods has not compensated its female faculty comparably to similarly situated male faculty. Nonetheless, although Department Policies allow for equity consideration to rectify such patterns and practices, Downes has never received an equity consideration that closes the aforementioned gender pay gap and the Department has never voted on a distribution of equity-based raises in accordance with Department Policies.

18. On or about February 21, 2019, Downes confronted Roberta Trites about the fact that Downes earned less than her similarly situated male colleagues on the basis of her sex. Downes specifically asserted that she had discovered that this practice began under former chair John Lust and has thus been a continuing harm. Roberta Trites rejected Downes' concerns and refused to rectify the situation. Roberta Trites further threatened retaliation against Downes by suggesting that such comments could be the basis of a defamation suit against Downes.

## COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

19.-36. Downes hereby incorporates Paragraphs One (1) through Eighteen (18) of this Complaint, above, as Paragraphs Nineteen (19) through Thirty-Six (36) of this Count I as if fully set forth herein.

37. Under Title VII of the *Civil Rights Act of 1964*, it is unlawful for a public or private employer to discriminate, limit, segregate, or classify employees on the basis of sex. Such unlawful discrimination includes, but is not limited to, sex discrimination in wages.

38. ISU has violated Title VII of the *Civil Rights Act of 1964* in the following ways:

   a. ISU treated Downes' similarly situated male tenured, full professors in the Department of Management and Quantitative Methods more favorably than Downes by paying them higher salaries than Downes as a result of their sex;

   b. ISU had an actual desire to pay Downes less than her male colleagues on the basis of her sex. This is evidenced by Downes' equal rank to her male colleagues, consistent ranking as "Raise Above the Standard Increment," and her publication track record;

   c. ISU refused to utilize its own ASPT and Department Policies to furnish Downes with raises in accordance with equity considerations; and

   d. ISU, through the interim chair of the Department of Management and Quantitative Methods, threatened to retaliate against Downes when Downes attempted to discuss the aforementioned issues with the interim chair.

39. At all times relevant herein, Downes was a member of a protected class by virtue of her sex, was meeting ISU's legitimate expectations, and received less compensation from ISU than her male colleagues as a result of her sex (by extension, ISU treated Downes' similarly

situated male colleagues more favorably).

40. As a result of ISU's violations of Title VII of the *Civil Rights Act of 1964*, Downes has been damaged. Downes' damages include, but are not limited to, compensatory damages in an amount comparable to the earnings of her similarly situated male colleagues and attorney's fees.

WHEREFORE, the Plaintiff, MEREDITH DOWNES, respectfully prays that this Honorable Court enter an Order granting the Plaintiff, MEREDITH DOWNES, the following relief:

A. Compensatory and liquidated damages, including punitive damages, attorney's fees, and costs, in an amount that will fully and fairly compensate her for her injuries and damages; and

B. Any and all further relief that this Honorable Court deems equitable and just.

## COUNT II – VIOLATION OF THE EQUAL PAY ACT

41.-58. Downes hereby incorporates Paragraphs One (1) through Eighteen (18) of this Complaint, above, as Paragraphs Forty-One (41) through Fifty-Eight (58) of this Count II as if fully set forth herein.

59. The *Equal Pay Act* prohibits an employer from discriminating

> between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

60. ISU has violated the Equal Pay Act in the following ways:

a. ISU treated Downes' similarly situated male tenured, full professors in the

        Department of Management and Quantitative Methods more favorably than Downes by paying them higher salaries than Downes as a result of their sex;

    b.    ISU had an actual desire to pay Downes less than her male colleagues on the basis of her sex. This is evidenced by Downes' equal rank to her male colleagues, consistent ranking as "Raise Above the Standard Increment," and her publication track record;

    c.    ISU refused to utilize its own ASPT and Department Policies to furnish Downes with raises in accordance with equity considerations; and

    d.    ISU, through the interim chair of the Department of Management and Quantitative Methods, threatened to retaliate against Downes when Downes attempted to discuss the aforementioned issues with the interim chair.

61.    At all times relevant herein, Downes was a member of a protected class by virtue of her sex, was meeting ISU's legitimate expectations, and received less compensation from ISU than her male colleagues as a result of her sex (by extension, ISU treated Downes' similarly situated male colleagues more favorably).

62.    As a result of ISU's violations of the Equal Pay Act, Downes has been damaged. Downes' damages include, but are not limited to, compensatory damages in an amount comparable to the earnings of her similarly situated male colleagues and attorney's fees.

WHEREFORE, the Plaintiff, MEREDITH DOWNES, respectfully prays that this Honorable Court enter an Order granting the Plaintiff, MEREDITH DOWNES, the following relief:

    A.    Compensatory and liquidated damages, including punitive damages, attorney's fees, and costs, in an amount that will fully and fairly compensate her for her

injuries and damages; and

B. Any and all further relief that this Honorable Court deems equitable and just.

PLAINIFF DEMANDS TRIAL BY JURY ON ALL COUNTS OF THIS COMPLAINT.

Respectfully Submitted,

MEREDITH DOWNES, Plaintiff,

By: **/s/ Dawn L. Wall**
Dawn L. Wall
ARDC No. 6196948
Costigan & Wollrab, P.C.
308 East Washington Street
Bloomington, Illinois 61701
Phone: (309) 828-4310
Fax: (309) 828-4325
dwall@cwlaowffice.com